No. 14-1832

_____

# United States Court of Appeals
# for the Third Circuit

_____

AMERICAN CHIROPRACTIC ASSOCIATION, et al.,

Plaintiffs-Appellants

vs.

AMERICAN SPECIALTY HEALTH, INCORPORATED, et al.,

Defendants-Appellees.

_____

On Appeal from the U.S. District Court for the
Eastern District of Pennsylvania

Civil Action No. 2:12-cv-07243

_____

**BRIEF OF PLAINTIFFS-APPELLANTS AND
VOLUME ONE OF THE JOINT APPENDIX
(Pages JA001-JA0023)**

_____

D. Brian Hufford                    Steven A. Schwartz
Jason S. Cowart                     Catherine Pratsinakis
ZUCKERMAN SPAEDER LLP               CHIMICLES & TIKELLIS LLP
1185 Avenue of the Americas         361 West Lancaster Avenue
New York, NY 10036                  Haverford, PA 19041
Telephone: (212) 704-9600           Telephone: (610) 642-8500
Facsimile: (212) 704-4256           Facsimile: (610) 649-3633

*Co-Lead Counsel for Plaintiffs-Appellants*
*[Additional Counsel on Signature Page]*

## TABLE OF CONTENTS

Table of Authorities ................................................................................ ii

Statement of Jurisdiction................................................................................1

Standard of Review........................................................................................1

Statement of Issues Presented ......................................................................2

Statement of Related Cases............................................................................3

Statement of the Case....................................................................................3

Summary of the Argument..............................................................................7

Argument........................................................................................................9

    I.    The District Court Erred in Concluding that Dr. Clarke Lacks Standing....................................................................................9

    II.    The District Court Erred in Concluding that the ACA Lacks Associational Standing ......................................................14

        A.    Dr. Clarke, an ACA Member, Has Standing to Sue ................15

        B.    Resolution of the ACA's Claims Does Not Require Substantial Participation by ACA Members............................15

    III.    The District Court Erred by Dismissing Lietz's Claims for Failure to Exhaust Administrative Remedies.....................................19

        A.    The Exhaustion Requirement Does Not Apply to Breach of Fiduciary Duty Claims Under ERISA..................................19

        B.    Failure to Exhaust is an Affirmative Defense on Which Defendants Have Not Met Their Burden.................................22

        C.    The District Court Should Have Excused Lietz From Any Applicable Exhaustion Requirement. ......................................25

    IV.    Plaintiffs' State Law Claims Should Be Reinstated............................28

Conclusion ...................................................................................................29

i

# TABLE OF AUTHORITIES

## CASES

*Baldwin v. Univ. of Pittsburgh Med. Ctr.*,
  636 F.3d 69 (3d Cir. 2011) ..............................................................1, 13

*Baptist Mem. Hosp.-Desoto Inc. v. Crain Auto. Inc.*,
  392 F. App'x 288 (5th Cir. 2010).........................................................25

*Bilyeu v. Morgan Stanley Long Term Disability Plan*,
  683 F.3d 1083 (9th Cir. 2012)...............................................................26

*Borrero v. United HealthCare of N.Y., Inc.*,
  610 F.3d 1296 (11th Cir. 2010).............................................................18

*CardioNet, Inc. v. Cigna Health Corp.*,
  --- F.3d ----, 2014 WL 1778149 (3d Cir. May 6, 2014) ............................. *passim*

*Carducci v. Aetna U.S. Healthcare*,
  247 F. Supp. 2d 596 (D.N.J. 2003).......................................................27

*City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc.*,
  156 F.3d 223 (1st Cir. 1998) ...........................................................9, 13

*Cromwell v. Equicor-Equitable HCA Corp.*,
  944 F.2d 1272 (6th Cir. 1991) ..............................................................9

*Ctr. For Restorative Breast Surgery, LLC v.
  Humana Health Benefit Plan of La., Inc.*,
  2014 WL 1276503 (E.D. La. Mar. 27, 2014).......................................26

*D'Amico v. CBS Corp.*,
  297 F.3d 287 (3d. Cir. 2002) ...............................................................21

*Denver Health & Hosp. Auth. v. Beverage Distribs. Co., LLC*,
  546 F. App'x 742 (10th Cir. 2013)........................................................10

*Ferro v. Metro. Ctr. for Mental Health*,
  2014 WL 1265919 (S.D.N.Y. Mar. 27, 2014) .....................................24

*Firestone Tire & Rubber Co. v. Bruch*,
  489 U.S. 101 (1989) ............................................................................13

*Francis v. UPS*,
    288 F. Supp. 2d 882 (D. Ohio 2003) ...................................................................14

*Gavalik v. Cont'l Can Co.*,
    812 F.2d 834 (3d Cir. 1987) .................................................................................20

*Goebert v. Lee Cnty.*,
    510 F.3d 1312 (11th Cir. 2007) .............................................................................26

*Gunning v. Unisys Corp.*,
    2009 WL 249793  (W.D. Pa. Feb. 2, 2009) .........................................................28

*Harrow v. Prudential Ins. Co. of Am.*,
    279 F.3d 244 (3d Cir. 2002) .................................................................... 20, 21, 27

*Hosp. Council of W. Pa. v. City of Pittsburgh*,
    949 F.2d 83 (3d Cir. 1991) ...................................................................................17

*Hunt v. Wash. State Apple Adver. Comm'n*,
    432 U.S. 333 (1977) .............................................................................................15

*Jones v. Bock*,
    549 U.S. 199 (2007) .............................................................................................22

*Karpiel v. Ogg, Cordes, Murphy & Ignelzi, LLP*,
    297 F. App'x 192 (3d Cir. 2008) ..........................................................................23

*Kerrigan v. Otsuka Am. Pharm., Inc.*,
    --- F. App'x ----, 2014 WL 1015934 (3d Cir. Mar. 18, 2014) ...............................1

*Lutheran Med. Ctr. of Omaha, NE v.*
    *Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan*,
    25 F.3d 616 (8th Cir. 1994) ...................................................................................9

*Metro. Life Ins. Co. v. Price*,
    501 F.3d 271 (3d Cir. 2007) ......................................................................... 20, 22

*Misic v. Bldg. Serv. Emps. Health & Welfare Trust*,
    789 F.2d 1374 (9th Cir. 1986) ..............................................................................10

*Montefiore Med. Ctr. v. Teamsters Local 272*,
    642 F.3d 321 (2d Cir. 2011) ...................................................................................9

iii

*N. Jersey Brain & Spine Ctr. v. St. Peter's Univ. Hosp.*,
  2013 WL 5366400 (D.N.J. Sept. 25, 2013).........................................................12

*Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*,
  280 F.3d 278 (3d Cir. 2002) ..................................................... 17, 18, 19

*Pareja v. Attorney Gen. of the United States*,
  615 F.3d 180 (3d Cir. 2010) .................................................................13

*Pension Trust Fund for Operating Eng'rs v.*
  *Mortg. Asset Securitization*,
  730 F.3d 263 (3d Cir. 2013) .................................................................23

*Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.,*
  371 F.3d 1291 (11th Cir. 2004)............................................................11

*Retired Chi. Police Ass'n v. City of Chi.*,
  7 F.3d 584 (7th Cir. 1993), *rev'd on other grounds*,
  *Levine v. United Healthcare Corp.*, 402 F.3d 156 (3d Cir. 2005) .......................18

*Slingland v. Donahoe*,
  542 F. App'x 189 (3d Cir. 2013) .................................................. 22, 23

*Small v. Camden Cnty.*,
  728 F.3d 265 (3d Cir. 2013) .................................................................26

*Spectrum Health v. Valley Truck Parts*,
  2008 WL 2246048 (W.D. Mich. Dec. 17, 2008) ..................................................13

*Tango Transp. v. Healthcare Fin. Servs. LLC*,
  322 F.3d 888 (5th Cir. 2003) ..................................................................9

*Taylor v. Oak Forest Health and Rehab., LLC*,
  2013 WL 4505386 (M.D.N.C. Aug. 22, 2013) ....................................................26

*Tregenza v. Great Am. Commc'ns Co.*,
  12 F.3d 717 (7th Cir.1993) ..................................................................22

*Trotter v. Kennedy Krieger Inst., Inc.*,
  2012 WL 3638778 (D. Md. Aug. 22, 2012)......................................................22

iv

*United Food and Commercial Workers Union Local 751 v.*
  *Brown Grp., Inc.*,
  517 U.S. 544 (1996) .......................................................................15

*Victaulic Co. v. Tieman*,
  499 F.3d 227 (3d. Cir. 2007) ..........................................................24

*Wachtel v. Guardian Life Ins. Co.*,
  223 F.R.D. 196 (D.N.J. 2004) ........................................................21

*Walters v. Odyssey Healthcare Mgmt. Long Term Disability Plan*,
  517 F. App'x 591 (9th Cir. 2013).....................................................25

*Warth v. Seldin*,
  422 U.S. 490 (1975) ......................................................... 15, 16, 17

*Wilson v. Kimberly–Clark Corp.*,
  254 F. App'x 280 (5th Cir. 2007)......................................... 22, 23, 27

*Yarde v. Pan Am. Life Ins. Co.*,
  67 F.3d 298, 1995 WL 539736 (4th Cir. Sept. 12, 1995) ....................9

*Zipf v. AT&T*,
  799 F.2d 889 (3d Cir.1986) ............................................................20

## STATUTES

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1331 ........................................................................1, 10

29 U.S.C. § 1002(8) ........................................................................14

29 U.S.C. § 1104 ....................................................................... 20, 21

29 U.S.C. § 1104(a)(1)....................................................................21

29 U.S.C. § 1132(a)(1)(B) ..................................................... 2, 19, 22

29 U.S.C. § 1132(a)(3).......................................................... 2, 19, 20

**REGULATIONS**

29 C.F.R. § 2560.503-1(b) ........................................................................25

29 C.F.R. § 2560.503-1(l) ................................................................. 13, 25

## STATEMENT OF JURISDICTION

Plaintiffs assert claims arising under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461, and the District Court exercised jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). JA052, ¶ 22.[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The District Court entered its opinion and final order granting Defendants' motion to dismiss the Complaint on March 27, 2014. JA001-19. Plaintiffs timely filed this appeal on April 4, 2014. JA020-23.

## STANDARD OF REVIEW

When reviewing an order dismissing an ERISA claim for lack of standing under Federal Rule of Civil Procedure 12(b)(1), or one granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court undertakes a "plenary review." *See Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 74 (3d Cir. 2011); *Kerrigan v. Otsuka Am. Pharm., Inc.*, --- F. App'x ----, 2014 WL 1015934, at *3 n.3 (3d Cir. Mar. 18, 2014). In either situation, this Court "accept[s] as true plaintiffs' material allegations, and construe[s] the complaint in the light most favorable to them." *Baldwin*, 636 F.3d at 73-74; *see also Kerrigan*, 2014 WL 1015934, at *3 n.3 (court determines whether plaintiff "may be entitled to relief . . . under any reasonable reading of the complaint") (citation omitted).

---

[1] Citations to pages of the Joint Appendix will be in the format "JA001." Citations to the Complaint will also include the relevant paragraph number or numbers.

## STATEMENT OF ISSUES PRESENTED

1.    Does a health care provider who receives from a patient an assignment of the right to benefit payments under the patient's employee welfare benefit plan have standing to bring a civil action under 29 U.S.C. §§ 1132(a)(1)(B) & 1132(a)(3)?

**Where preserved**: Plaintiffs' Complaint, JA046-47, ¶ 6; JA049, ¶ 14; JA078, ¶¶ 101-02; Defendants' motions to dismiss, JA141-44, JA408-10; and Plaintiffs' opposition thereto, JA457-62. The District Court ruled on this issue on March 27, 2014. JA013-17.

2.    Does an association have standing to pursue declaratory and injunctive relief where at least one member has standing in his own right and where the case can be adjudicated without substantial participation from individual members of the association?

**Where preserved**: Defendants' motions to dismiss, JA144-47, JA414; and Plaintiffs' opposition thereto, JA464-70. The District Court ruled on the issue on March 27, 2014. JA017-18.

3.    Should a complaint be dismissed for failing to negate the affirmative defense of failure to exhaust ERISA's administrative remedies, where (a) the complaint includes statutory claims; (b) the complaint's allegations reflect that no

remedy was available; and (c) the complaint plausibly alleges that exhaustion should be excused?

**Where preserved**: Defendants' motions to dismiss, JA152-55, JA404-05; and Plaintiffs' opposition thereto, JA482-90. The District Court ruled on the issue on March 27, 2014. JA010-13.

## STATEMENT OF RELATED CASES

This case has not previously been before this Court. An appeal is pending before this Court in an unrelated case, which raises certain legal questions concerning provider assignments that are substantively similar to those involved in this appeal. *See N. Jersey Brain & Spine Ctr. v. Aetna, Inc*., No. 14-8025 (3d Cir.).

## STATEMENT OF THE CASE

This action challenges Defendants' improper policies, which violate ERISA to the detriment of both individuals insured under private employee benefit plans and their health care providers.

Defendants CIGNA Corporation and Connecticut General Life Insurance Company (together, "CIGNA") issue and administer employee welfare benefit plans governed by ERISA. JA046, ¶¶ 4-5. CIGNA retained Defendants American Specialty Health Incorporated and American Specialty Health Networks, Inc. (together, "ASHN") to serve as CIGNA's claims administrator for chiropractic

services. JA047, ¶ 7. CIGNA pays ASHN an administrative fee for its claims-processing services. *Id*. ASHN is not a health care provider. *Id.*

Plaintiffs Dr. Steven G. Clarke, D.C. ("Dr. Clarke") and the American Chiropractic Association ("ACA") allege that Defendants improperly restrict the provision of chiropractic services by, *inter alia*, imposing preauthorization requirements and artificial coverage limitations which are directly at odds with CIGNA's plans. JA047-48, ¶ 9; JA068-88, ¶¶ 71-129. Dr. Clarke filed suit pursuant to assignments he received from his patients, who are participants and beneficiaries under ERISA plans, to challenge the practices Defendants follow when making benefit determinations relating to chiropractic services, leading to improperly reduced coverage. JA045-46, ¶ 2.

The standard Assignment of Benefits form Dr. Clarke received from his patients states in relevant part: "I authorize payment of medical benefits to High Street Rehabilitation, LLC for all services rendered." JA078, ¶ 101; *see also* JA049, ¶ 13 (Dr. Clarke practices under the name High Street Rehabilitation). Based on these assignments, Defendants have paid Dr. Clarke directly for his patients' benefits claims and have permitted Dr. Clarke to appeal adverse benefits determinations in connection with the assigned claims. JA048, ¶ 10. Dr. Clarke and the ACA seek to enjoin Defendants' illegal benefit determination policies.

Plaintiff Carol A. Lietz ("Lietz") is a participant in a CIGNA plan. When Lietz received chiropractic services, she or her chiropractor submitted a benefit claim, which was processed by ASHN. JA046-47, ¶¶ 3, 7; JA054, ¶ 28. Defendants then forced Lietz to pay ASHN's administrative fee out of her own pocket, directly contrary to the terms of Lietz's plan and in violation of ERISA. JA057, ¶ 39.

Defendants' fixed policies and uniform practices enable them to secretly overcharge insureds like Lietz. First, CIGNA's internal policies require chiropractors to contract with ASHN in order to obtain access to CIGNA's insureds as "in-network" providers. JA069, ¶ 73. CIGNA also induces its insureds, like Lietz, to use "in-network" providers by promising savings resulting from negotiated rates that are "well within the plan's allowable charges." JA057-58, ¶ 41. When a claim is submitted for chiropractic services, ASHN pays the "in-network" chiropractor based on an ASHN fee schedule. JA060, ¶ 48. CIGNA then reimburses ASHN for the amount ASHN paid the chiropractor, and also pays ASHN an additional administrative fee for serving as the plan's chiropractic claims administrator. *Id.*; *see also* JA055-56, ¶¶ 34-35.

Rather than paying ASHN's administrative fee itself, however, CIGNA illegally passes that cost on to its insureds. JA061, ¶¶ 51-52. To hide the overcharge, CIGNA issues the insured an Explanation of Benefits ("EOB") form

that mischaracterizes CIGNA's *total* payment to ASHN – that is, the amount actually paid to the provider *plus* the administrative fee – as a medical expense. JA055, ¶ 34; JA061, ¶ 52. CIGNA's total payment to ASHN is further falsely reported as the "amount billed" by the health care provider, which CIGNA claims to have recognized in full as the "allowed amount" under the plan. JA055-56, ¶¶ 32-34; JA059-60, ¶¶45-47. For Lietz, since the amount of CIGNA's payment to ASHN was within her deductible, CIGNA held her responsible for the full amount, which was taken directly from her Health Savings Account. JA055-56, ¶¶ 34-35.

Thus, unbeknownst to Lietz, she was charged ***more*** than Defendants actually paid to her in-network health care provider. Defendants do not inform plan participants of these policies, however, but rather conceal them through the false EOBs, which represent that no portion of the claims was denied and thereby preclude any administrative review. *Id*.; JA059-60, ¶¶45-47. Lietz seeks to compel Defendants to remove the administrative fees from their calculations of medical benefits, and to enjoin any further fraudulent practices.

## SUMMARY OF THE ARGUMENT

The District Court erred as a matter of law when it dismissed Dr. Clarke's and the ACA's claims for lack of standing and Lietz's claims for failure to demonstrate administrative exhaustion.

The District Court's conclusion that Dr. Clarke lacked standing conflicts with a long line of authority, recently joined by this Court, holding that a provider who receives an assignment of benefits from a patient has standing under ERISA to assert whatever rights the patient otherwise had. *See CardioNet, Inc. v. Cigna Health Corp.*, --- F.3d ----, 2014 WL 1778149, at *9 n.10 (3d Cir. May 6, 2014). Moreover, to establish standing, a plaintiff need only establish a "colorable claim" to plan benefits, a standard which Dr. Clarke's entitlement to direct payment of benefits easily satisfies. Dr. Clarke's assignments are therefore more than sufficient to give him standing under ERISA.

Because Dr. Clarke, an ACA member, has standing, the District Court's conclusion that the ACA lacks associational standing was also erroneous. An association need only show that *one* of its members has standing in order to bring claims on its members' behalf. And here, the ACA can prove its claims for declaratory and injunctive relief without substantial participation by individual members. Therefore, the District Court should not have dismissed the ACA's representative claims.

The District Court also erred by dismissing Lietz's claims for failure to exhaust her administrative remedies. First, because a plaintiff is not required to exhaust statutory claims under ERISA, the District Court should not have dismissed Lietz's statutory breach of fiduciary duty claims. Second, by requiring Lietz to plead facts sufficient to establish exhaustion, the District Court improperly shifted to Lietz the burden of negating an affirmative defense in the Complaint. Lack of exhaustion did not appear on the face of the Complaint because there was no allegation that any administrative remedy could have addressed Lietz's claims.

Finally, in refusing to excuse exhaustion, the District Court utterly ignored the nature of Lietz's claims. Lietz alleges that Defendants' false and misleading EOBs hid the improper administrative fee and misrepresented that the bills submitted by her provider were "allowed" in their entirety – meaning that there were no adverse benefit determinations for her to appeal. Because Defendants failed to offer Lietz an opportunity for full and fair review of their overcharges, ERISA regulations require her claims to be "deemed exhausted." Further, Lietz has plausibly alleged that exhaustion would have been futile due to the application of Defendants' fixed policies in improperly imposing administrative fees on participants and issuing misleading EOBs to hide those fees.

**ARGUMENT**

## I. THE DISTRICT COURT ERRED IN CONCLUDING THAT DR. CLARKE LACKS STANDING.

This Court recently confirmed that a health care provider "may obtain standing to sue by assignment from a plan participant," expressly joining the overwhelming majority of Circuit Courts that permit assignees to bring ERISA claims. *CardioNet*, 2014 WL 1778149, at *9 n.10.[2] Ruling before *CardioNet* was decided, however, the District Court relied almost exclusively on district court decisions to find that Dr. Clarke's assignments were insufficient because they did not expressly authorize him to sue. JA014-15.

The District Court's cramped interpretation of Dr. Clarke's assignments does not comport with black-letter assignment law. As this Court explained in *CardioNet*:

---

[2] In fact, *every* Circuit Court that has addressed the issue has found that assignees can have standing under ERISA. *See*, *e.g.*, *City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc.*, 156 F.3d 223, 228 (1st Cir. 1998); *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 330-32 (2d Cir. 2011); *Yarde v. Pan Am. Life Ins. Co.*, 67 F.3d 298, 1995 WL 539736, at *5-6 (4th Cir. Sept. 12, 1995); *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 893-94 (5th Cir. 2003); *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir. 1991); *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 699 (7th Cir. 1991); *Lutheran Med. Ctr. of Omaha, NE v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan*, 25 F.3d 616, 619 (8th Cir. 1994); *Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374, 1378 n.4 (9th Cir. 1986); *Denver Health & Hosp. Auth. v. Beverage Distribs. Co., LLC*, 546 F. App'x 742, 745 (10th Cir. 2013); *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1352 (11th Cir. 2009). The question has not yet been presented to the Court of Appeals for the District of Columbia Circuit.

> It is a basic principle of assignment law that an assignee's rights derive from the assignor. That is, "an assignee of a contract occupies the *same legal position* under a contract as did the original contracting party, he or she can acquire through the assignment *no more and no fewer rights* than the assignor had. . . ." . . . Thus, assuming the validity of the Participants' assignments to the Providers, [the providers] now stand in the shoes of the Participants, and have "standing *to assert whatever rights the assignor[s] possessed*."

2014 WL 1778149, at *10 (citations omitted) (emphasis in original). Here, Dr. Clarke's patients assigned to him the right to receive "payment of medical benefits. . . for all services rendered." JA078, ¶ 101. As a result, Dr. Clarke "now stand[s] in the shoes" of his patients, and has standing to assert "whatever rights" his patients possessed with respect to the right to receive payment of medical benefits for the services he rendered. *CardioNet*, 2014 WL 1778149, at *10; *see also Denver Health*, 546 F. App'x at 745 ("As the assignee of Mr. Hood, DHHA 'stands in [his] shoes. . . and, if the assignment is valid, has standing to assert whatever rights [he] possessed.'") (quoting *Misic*, 789 F.2d at 1378 n.4).

In other words, the assignment to Dr. Clarke of the right to benefits necessarily included the right to sue to obtain benefits that were improperly denied. The Eleventh Circuit recognized this fact in *Connecticut State Dental v. Anthem Health Plans, Inc.*, 591 F.3d 1337 (11th Cir. 2009), where it rejected the insurer's contention that the assignments at issue – which were virtually identical to the ones

used by Dr. Clarke[3] – were "ineffective to create standing because they convey only the right to receive payment of benefits and not the patient's right to file an action under § 502(a)." *Id.* at 1352; *compare* JA014-15. Instead, the Eleventh Circuit held that "[an] assignment of the right to payment **is enough to create standing**," given that "an assignment furthers ERISA's purposes only if the provider can enforce the right to payment." 591 F.3d at 1352 (emphasis added).[4] *See also Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.,* 371 F.3d 1291, 1294 (11th Cir. 2004) ("Healthcare providers may acquire derivative standing . . . by obtaining a written assignment from a 'beneficiary' or 'participant' of his right to payment of benefits under an ERISA-governed plan."). Thus, the Eleventh Circuit – in a case cited approvingly by this Court in *CardioNet,* 2014 WL 1778149 at *10 – expressly rejected the reasoning the District Court used in this case to find that Dr. Clarke did not have standing to pursue ERISA claims.

---

[3] The assignment before the Eleventh Circuit said, "I hereby authorize **payment of the dental benefits** otherwise payable to me directly to the below named dental entity." 591 F.3d at 1351 (emphasis added).

[4] Explaining why recognizing provider standing facilitates protection of ERISA rights, the Eleventh Circuit stated that "if provider-assignees can sue for payment of benefits, an assignment will transfer the burden of bringing suit from plan participants and beneficiaries to 'providers[, who] are better situated and financed to pursue an action for benefits owed for their services.'" *Conn. State Dental*, 591 F.3d at 1353 (quoting *Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir.1997)).

Notably, in holding that providers could obtain ERISA standing through assignments, this Court in *CardioNet* cited just one decision from a lower court in this Circuit, which it described as holding that "providers [could] assert **properly assigned** ERISA claims on behalf of their patients." 2014 WL 1778149, at *9 n.10 (citing *N. Jersey Brain & Spine Ctr. v. St. Peter's Univ. Hosp.*, 2013 WL 5366400, at *3 (D.N.J. Sept. 25, 2013)) (emphasis added). In *Spine Center*, standing was based upon an assignment that contained no explicit reference to the right to sue, nor even to "benefits" like the assignments here, but merely assigned "**all payments** for medical services rendered" to the insured.[5] This Court's approval of both *Connecticut State Dental* and *Spine Center* – each holding that the assignment of the right to direct payment, by itself, gave the provider standing – demonstrates that the District Court erred as a matter of law in finding Dr. Clarke's assignments insufficient.

Moreover, by requiring Dr. Clarke to plead a "complete" legal assignment in order to establish standing, the District Court imposed on Plaintiffs an impermissibly heightened pleading standard. There is no question that in order to establish standing to sue under ERISA as either a participant or a beneficiary, a plaintiff need only make out a "colorable claim" to benefits under an ERISA plan.

---

[5] The assignment stated, "I hereby assign to [Plaintiff] all **payments for medical services** rendered to myself or my dependents." *Spine Center*, 2013 WL 5366400, at *3 n.3 (emphasis added).

12

*See, e.g.*, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989) (announcing "colorable claim" standard with respect to standing of ERISA participants); *Baldwin*, 636 F.3d at 75 (applying *Firestone* test to standing of ERISA beneficiaries). A colorable claim is one that is not "wholly insubstantial and frivolous." *Pareja v. Attorney Gen. of the United States*, 615 F.3d 180, 186 (3d Cir. 2010); *see also Baldwin*, 636 F.3d at 78 (colorable claim does not require a showing of a likelihood of success on the merits).[6] Dr. Clarke easily meets this standard because, standing in the shoes of his insured patients by virtue of his assignments, he has, at a minimum, a colorable claim that he is entitled to benefits under the relevant ERISA plans.[7]

---

[6] The fact that Dr. Clarke need only make out a "colorable" claim means that the potential existence of a defense to his claims does not bear on whether he has standing to sue. *See, e.g.*, *City of Hope*, 156 F.3d at 228 (standing inquiry does not focus on merits, but only "'whether the litigant is entitled to have the court decide the merits of the dispute.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Here, the District Court appropriately did not make any findings with respect to the validity of Dr. Clarke's assignments. Plaintiffs alleged that Defendants engaged in conduct that waived any right to challenge the assignments here. *See* JA045, ¶ 2; JA048, ¶ 10. Those factual allegations must be taken as true.

[7] The District Court also erred by refusing even to consider Dr. Clarke's standing as an Authorized Representative of a patient. JA455-57, JA495. *See Spectrum Health v. Valley Truck Parts*, 2008 WL 2246048, at *4 (W.D. Mich. Dec. 17, 2008) (Because ERISA regulations "provide that a plan's claim procedures may not 'preclude an authorized representative of a claimant from acting on behalf of such claimant in pursuing a benefit claim or appeal of an adverse benefit determination,'" the provider plaintiff could "properly assert a claim for benefits due [the subscriber] pursuant to the Plan.")(citing 29 C.F.R. § 2560.503-1(b)(4)); *Francis v. UPS*, 288 F. Supp. 2d 882, 893 (D. Ohio 2003) (ERISA regulations

The conclusion that an assignment of benefits gives a provider standing to assert the patient's ERISA rights is also entirely consistent with the statutory language of ERISA itself, which defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Thus, by being "designated" as the party entitled to receive a benefit, the provider becomes a "beneficiary" under ERISA, entitled to all the rights arising thereunder. *See, e.g.*, *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 699 (7th Cir. 1991) (because the participant "designated [the provider] as the person to receive her benefits, [t]hat makes [the provider] a 'beneficiary'").

Because the assignments Dr. Clarke obtained gave him standing to sue under ERISA, the District Court erred in dismissing his claims.

## II.    THE DISTRICT COURT ERRED IN CONCLUDING THAT THE ACA LACKS ASSOCIATIONAL STANDING

An association has representative standing when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim

---

require plan "to allow a claimant to appeal a claim denial through his 'authorized representative.'"). At a minimum, the District Court should have afforded Plaintiffs an opportunity to amend their Complaint to allege additional facts regarding that alternative basis for standing. However, Plaintiffs should not be required to amend in order to rely on Dr. Clarke's status as an Authorized Representative, as the facts regarding that form of designation can be elaborated during discovery.

asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). The District Court erroneously found that the ACA did not meet this test. JA018.[8]

### A.   Dr. Clarke, an ACA Member, Has Standing to Sue

The District Court concluded that the ACA failed to meet the first *Hunt* requirement based solely on its erroneous finding that Dr. Clarke lacked standing. JA018. As explained above, Dr. Clarke does have standing in his own right to assert ERISA claims. *See supra* § I. That is sufficient for the ACA's standing, since it is well established that the *Hunt* test only requires an association to show that ***one*** of its members would otherwise have standing. *See Warth*, 422 U.S. at 511 ("The association must allege that its members, ***or any one of them***, are suffering immediate or threatened injury. . . .") (emphasis added); *United Food and Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996) (*Hunt* "require[s] an organization suing as representative to include ***at least one member*** with standing. . .") (emphasis added). The District Court's holding that the ACA failed the first prong of *Hunt* was therefore legally incorrect.

### B.   Resolution of the ACA's Claims Does Not Require Substantial Participation by ACA Members

The District Court also erred in concluding that the ACA fails the third prong of the *Hunt* test on the ground that the ACA's members would purportedly

---

[8] There is no dispute that the ACA satisfies the second prong. JA018.

have to participate individually in the case to demonstrate both the sufficiency of their assignments and that their patients suffered an injury. JA018. Those issues, however, go to whether each of the ACA's members would have standing as ERISA assignees necessary to obtain individual relief. But because a single ACA member with standing will satisfy the first prong of *Hunt*, there simply is no need for every ACA member to make the detailed individualized showings contemplated by the District Court, particularly given that the ACA is seeking declaratory and injunctive relief, not individualized remedies.

The District Court did *not* find that proof of the *merits* of the ACA's claims required the participation of individual ACA members – nor could it. The gravamen of the ACA's claims is that Defendants adopted policies and methods of administering claims relating to chiropractic medicine that violate ERISA. *See* JA451-52. The ACA is seeking prospective declaratory and injunctive relief to redress those improper policies. JA116, ¶ 216. The relevant evidence in this case, therefore, is in the Defendants' possession, and the participation of the ACA's members is not needed to establish the essential facts.

Courts routinely find that claims like those at issue here – which seek broad-based, uniform relief from unlawful policies and practices – do not require the kind of extensive participation from individual association members that would bar representational standing. *See, e.g.*, *Warth*, 422 U.S. at 515 ("[W]hether an

16

association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought"); *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 284 n.3 (3d Cir. 2002) ("Individual participation by an association's membership may be unnecessary when the relief sought is prospective (i.e., an injunction or declaratory judgment)" (citing cases)).

Even if some level of participation by some ACA members is ultimately necessary, this Court has repeatedly rejected the notion that "some individual participation" violates the third *Hunt* requirement. *Pa. Psychiatric Soc'y*, 280 F.3d at 284 (discussing *Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83, 89 (3d Cir. 1991)). For example, in *Hospital Council*, despite acknowledging that association members would likely have to provide certain discovery and trial testimony, this Court saw "no ground for denying associational standing" because the case did not require *each* injured party to participate. 949 F.2d at 89-90. *See also Warth*, 422 U.S. at 511 (associational standing appropriate "so long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable" to the case).

Following *Hospital Council*, this Court later found that an association had sufficiently alleged standing to assert ERISA claims involving "systemic policy violations" that made "extensive individual participation unnecessary." *Pa.*

*Psychiatric Soc'y*, 280 F.3d at 286.[9] As the Court reasoned, "'challenge[s] to alleged practices' . . . may not involve specific, factually intensive, individual medical care determinations," which therefore could be established "with limited individual participation" so as to satisfy the requirements for associational standing. *Pa. Psych. Soc'y*, 280 F.3d at 286 (citations omitted).

Other Circuits similarly reject the view that *Hunt* requires an association to show that the case will involve *no* participation by individual members, through discovery or otherwise. *See, e.g.*, *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 601-02 (7th Cir. 1993) ("We can discern no indication . . . that the Supreme Court intended to limit representational standing to cases in which it would not be necessary to take any evidence from individual members of an association. . . ."); *Borrero v. United HealthCare of N.Y., Inc.*, 610 F.3d 1296, 1306 (11th Cir. 2010) (lawsuit seeking "alteration of United's methodology, not redress for any specific past decision," required only limited participation by association members).

This action involves exactly the sort of claims an association should pursue. The ACA is not asking the court to evaluate individual claims, nor is it seeking

---

[9] The District Court refused to consider *Pennsylvania Psychiatric Society* because that case did not address assignee standing and the defendant therein had conceded the first *Hunt* prong. JA018 at n.9. But *Pennsylvania Psychiatric Society* and *Hospital Council* are both controlling authority on whether an association plaintiff has to show that a case will require *no* participation from individual members to meet the *third* prong of *Hunt*. The District Court erred by failing to apply these binding precedents to the ACA's substantive claims. *See* JA468-69 (citing *Pa. Psychiatric Soc'y* and *Hosp. Council*).

benefits or monetary damages. Rather, the ACA is requesting appropriate declaratory or injunctive relief, which will require Defendants to comply with ERISA in administering chiropractic claims. Individual participation by the ACA's members is not needed for this; the focus will be entirely on Defendants' conduct.

Finally, the District Court also erred in dismissing the ACA's claims without first giving the ACA "the opportunity to establish the alleged violations without significant individual participation. . . ." *Pa. Psych. Ass'n*, 280 F.3d at 286 (holding that because appeal arose from a motion to dismiss, the association "should be allowed to move forward with its claims within the boundaries of associational standing."). At this point in the case, it is far too early to conclude that the ACA cannot prove its claims without extensive, individualized participation by its members. The Defendants have not answered the Complaint, no discovery has been taken, and the claims and defenses at issue have not yet been developed. At this preliminary stage, the District Court should not have dismissed the ACA's claims for lack of associational standing.

## III.  THE DISTRICT COURT ERRED BY DISMISSING LIETZ'S CLAIMS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

### A.  The Exhaustion Requirement Does Not Apply to Breach of Fiduciary Duty Claims Under ERISA.

Lietz sued Defendants not just for benefits under 29 U.S.C. § 1132(a)(1)(B), but also for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), based on

Defendants' improper actions in hiding the ASHN administrative fees within the medical expenses reported on the EOBs. The District Court's dismissal of Lietz's breach of fiduciary duty claims for failure to exhaust flouted this Court's longstanding admonition that the exhaustion requirement does not apply to claims seeking to enforce a statutory right under ERISA. *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007) (exhaustion not required "where the claim seeks to enforce a statutory right under ERISA"); *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 849 (3d Cir. 1987); *Zipf v. AT&T*, 799 F.2d 889, 891 (3d Cir.1986). As this Court has held, breach of fiduciary duty claims are statutory ERISA claims, and therefore exempt from the judicially-created exhaustion requirement. *See Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 252-53 (3d Cir. 2002); *see also* 29 U.S.C. § 1104 (defining duties of ERISA fiduciaries); 29 U.S.C. § 1132(a)(3) (civil action to remedy statutory violations).

At its heart, Lietz's fiduciary duty claim turns on Defendants' flagrant disregard for her interests in favor of their own. JA116, ¶¶ 217-19 (asserting cause of action under 29 U.S.C. § 1132(a)(3)). Lietz alleges that Defendants unlawfully removed funds from her Health Savings Account ("HSA") for purposes other than paying qualified medical expenses, misappropriated those funds to their own uses, and covered up their misconduct by issuing false and misleading EOBs. JA055-57,

20

¶¶ 32-39. Adjudicating the claim will thus require interpretation and application of ERISA itself, not the terms of Lietz's plan.

For example, the court need not interpret any plan terms to determine whether Defendants' mischaracterization of administrative fees as medical expenses in order to pass those costs on to Lietz without her knowledge violated their fiduciary duty to administer the plan solely for the benefit of the participants. *See* 29 U.S.C. § 1104(a)(1). Nor does the Court need to interpret the plan terms to decide whether issuing EOBs that falsely report the amount billed by and paid to the provider violated Defendants' duty to administer the plan with the care, skill, and diligence of a prudent man. *Id.* at § 1104(a)(1)(B). As these examples illustrate, Lietz's fiduciary duty allegations do not merely re-cast a claim for plan benefits.[10] *Compare Harrow*, 279 F.3d at 254 (construing claim as seeking plan benefits) *and D'Amico v. CBS Corp.*, 297 F.3d 287, 291 (3d. Cir. 2002) (same) *with Wachtel v. Guardian Life Ins. Co.*, 223 F.R.D. 196, 206 (D.N.J. 2004) (distinguishing breach of fiduciary duty claims at issue in that case to claims for plan benefits found to be subject to exhaustion in *D'Amico*). Accordingly, Lietz's fiduciary duty claims are not subject to the exhaustion requirement and should not have been dismissed.

---

[10] Indeed, unlike a classic denial-of-benefits claim, Lietz does not allege that Defendants underpaid the benefit or that the provider did not receive everything he was owed. Rather, the claim focuses on *how* Defendants administered the plan to overcharge Lietz and line their own pockets.

### B.    Failure to Exhaust is an Affirmative Defense on Which Defendants Have Not Met Their Burden.

To the extent the exhaustion requirement applies to Lietz's claims at all,[11] failure to exhaust is an affirmative defense. *Price*, 501 F.3d at 280; *Slingland v. Donahoe*, 542 F. App'x 189, 191 (3d Cir. 2013). Exhaustion is not, therefore, an element of an ERISA claim, and it need not be pleaded by an ERISA plaintiff. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) (holding that because "failure to exhaust is an affirmative defense" under the Prisoner Litigation Reform Act ("PLRA"), inmates "are not required to specially plead or demonstrate exhaustion in their complaints"); *Wilson v. Kimberly–Clark Corp.*, 254 F. App'x 280, 287 (5th Cir. 2007) (following *Jones* in holding that ERISA plaintiffs "need not have" pleaded exhaustion of administrative remedies); *Trotter v. Kennedy Krieger Inst., Inc.*, 2012 WL 3638778, at *6 n.3 (D. Md. Aug. 22, 2012) (same).[12] *See also Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir.1993) ("[A] plaintiff is not required to negate an affirmative defense in his complaint.") (discussed with

---

[11] In addition to her breach of fiduciary duty claims, Lietz has also asserted a distinct claim under 29 U.S.C. § 1132(a)(1)(B) to enforce her rights under the terms of her plan. JA114-16 ¶¶ 206-16. Among other things, under the terms of the plan, Lietz should not have been charged for administrative costs. JA057, ¶ 39.

[12] In *Jones*, the Supreme Court emphasized that "the PLRA does not itself require plaintiffs to plead exhaustion." 549 U.S. at 217. Likewise, ERISA itself does not require plaintiffs to exhaust administrative remedies. *Price*, 501 F.3d at 279. Courts should not therefore elevate exhaustion to a pleading requirement as a matter of judicial interpretation. *Cf. Jones*, 549 U.S. at 216 ("the judge's job is to construe the statute – not to make it better.").

approval by this Court in *Pension Trust Fund for Operating Eng'rs v. Mortg. Asset Securitization*, 730 F.3d 263, 270-71 (3d Cir. 2013)).

The burden of proving an affirmative defense – including failure to exhaust – rests on the defendant. *Karpiel v. Ogg, Cordes, Murphy & Ignelzi, LLP*, 297 F. App'x 192, 193 (3d Cir. 2008). By holding that Lietz's allegations were insufficient to negate the affirmative defense, the District Court improperly shifted the burden to Lietz. *See, e.g.*, *Pension Trust Fund*, 730 F.3d at 271 (declining to require "plaintiff to plead compliance with a statute of limitations" because that "would effectively ensure that a timeliness issue would always appear on the face of a complaint, thereby shifting the burden to the plaintiff to negate the applicability of the affirmative defense.").

Even if it would be Lietz's burden to show that exhaustion should be excused, the burden should not shift to her until after the Defendants have first proven the affirmative defense: that is, that Lietz failed to exhaust an available administrative remedy. *See, e.g.*, *Karpiel*, 297 F. App'x at 194 (vacating summary judgment because burden did not shift to plaintiff where plan administrator "fail[ed] to provide . . . any information regarding the exhaustion requirements of the Plan"); *Slingland*, 542 F. App'x at 191 (failure to exhaust is grounds for dismissal only where "the defendant has met 'the burden of pleading'" it) (citation omitted); *Wilson*, 254 F. App'x at 286 (reversing dismissal based on exhaustion

requirement where Defendants failed to show "how 'the plan is capable of providing the relief sought by the plaintiff'") (citation omitted).

Below, Defendants were conspicuously silent as to what remedy the plan purportedly provided to Lietz, and for good reason. *No* administrative remedy was in fact available. She never received any notice of an adverse benefits determination or a denial of benefits that she could have appealed. To the contrary, Defendants' EOBs reflected – albeit falsely – that the claims were allowed and *paid in full to the provider* from Lietz's HSA. *See, e.g.*, JA055-56, ¶¶ 33-34. No allegation in the Complaint even hints that there was any administrative procedure Lietz could have or should have followed to pursue her objections to the false EOBs or the overcharges they masked, and Defendants certainly identified none. Absent any such allegations, the affirmative defense of failure to exhaust does not appear on the face of the Complaint, and it should not have triggered a Rule 12(b)(6) dismissal. *See, e.g.*, *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d. Cir. 2007) ("Generally speaking, we will not rely on an affirmative defense. . . to trigger dismissal of a complaint under Rule 12(b)(6)") (internal quotation marks omitted) (citation omitted); *Ferro v. Metro. Ctr. for Mental Health*, 2014 WL 1265919, at *6-7 (S.D.N.Y. Mar. 27, 2014) (declining to dismiss ERISA claims where failure to exhaust did not appear on face of the complaint).

24

**C.    The District Court Should Have Excused Lietz From Any Applicable Exhaustion Requirement.**

Even if the Court could conclude at this stage that Lietz failed to exhaust an available administrative remedy, any such failure should have been excused based on either "deemed exhaustion" or futility.

*First*, the District Court erred by failing even to consider "deemed exhaustion" under ERISA. JA487-90. When a plan fails to "establish and follow reasonable claims procedures" under ERISA, a claimant "shall be deemed to have exhausted the administrative remedies" and therefore becomes "entitled to pursue any available remedies under section 502(a)." 29 C.F.R. § 2560.503-1(l). Here, Defendants never notified Lietz of any denial of benefits, the specific reasons for any such denial, or Lietz's right to appeal – all of which are required elements of a reasonable procedure under ERISA. *See, e.g.*, *id*. at §§ 2560.503-1(b)(2), (b)(5), (f), (g)(1) & (h)(2). Because Defendants failed to follow reasonable claims procedures with respect to Lietz, deemed exhaustion applies. *See, e.g.*, *Baptist Mem. Hosp.-Desoto Inc. v. Crain Auto. Inc.*, 392 F. App'x 288, 294 (5th Cir. 2010) (remedies deemed exhausted where administrator failed to provide any written notice the claim was denied or specific reasons for denial, and never advised claimant of its administrative remedies); *Walters v. Odyssey Healthcare Mgmt. Long Term Disability Plan*, 517 F. App'x 591, 592 (9th Cir. 2013) (on a motion to dismiss, allegation that administrator failed to process claim sufficient to support

deemed exhaustion); *Taylor v. Oak Forest Health and Rehab., LLC*, 2013 WL 4505386, at *3 (M.D.N.C. Aug. 22, 2013) ("lack of notice regarding the administrative process can constitute an exception to the exhaustion requirement").

Courts have also found "deemed exhaustion" where a plan issued an incomplete EOB or otherwise precluded a full and fair review of a participant's claims.[13] *See, e.g.*, *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1089 (9th Cir. 2012) (exhaustion excused where termination of benefits letter was ambiguous as to claimant's remedy).[14] Here, the EOBs Lietz received were incomplete because they failed to disclose the administrative fee paid to ASHN or that Lietz's doctor – the real "provider" under the terms of her plan – did not in fact receive payment in full for the "amount billed." JA055-56, ¶¶ 32-34. The EOBs were also misleading, because they claimed that the "provider" received payment in full for the "amount billed," when in fact a portion of that amount was

---

[13] In the analogous context of the PLRA, this Court has held that "[r]emedies that are not reasonably communicated to inmates may be considered unavailable for exhaustion purposes." *Small v. Camden Cnty.*, 728 F.3d 265, 271 (3d Cir. 2013); *see also Goebert v. Lee Cnty.*, 510 F.3d 1312, 1323 (11th Cir. 2007) ("That which is unknown and unknowable is unavailable. . ."). In the same way, even if some administrative remedy for Defendants' scheme might exist, Defendants' false EOBs did not reasonably communicate that remedy to Lietz.

[14] *See also Ctr. For Restorative Breast Surgery, LLC v. Humana Health Benefit Plan of La., Inc.*, 2014 WL 1276503, at *5 (E.D. La. Mar. 27, 2014) (remedies deemed exhausted where defendants allegedly "engaged in conduct that deprived participants of a full and fair review of their claims . . . including discouraging them from pursuing procedural remedies and withholding information").

retained by ASHN. JA055-56, ¶¶ 33-34. Accordingly, Lietz should be deemed to have exhausted her remedies.

***Second***, the District Court erred by finding that Lietz had not sufficiently alleged futility. Although Lietz bore no burden to do so, she plausibly alleged that any administrative appeal of the falsified EOBs would have been futile. The Complaint gives numerous examples of complaints being submitted to Defendants concerning their improper treatment of ASHN's administrative fees. *See, e.g.*, JA056-57, ¶¶ 37-38, JA060-61, ¶¶ 48-50. In response, Defendants sought to justify their improper practices by referring to their respective fee schedules – in other words, their fixed policies with respect to payment of claims. JA057, ¶ 38; JA060-61, ¶¶ 48, 50. Defendants also continued the same practices even after providers challenged them. JA063-64, ¶¶ 58, 60. Because of these fixed policies, even if Lietz had added her voice to the chorus of grievances, she similarly would have been deflected and ignored. Thus, Lietz has plausibly alleged futility. *See, e.g.*, *Harrow*, 279 F.3d at 250 (fixed policy denying benefits indicates exhaustion would be futile); *Wilson*, 254 F. App'x at 286 (exhaustion futile where "plan does not appear to provide any remedies to Plaintiffs").[15]

---

[15] In any event, futility is a fact-intensive inquiry, and the District Court should not have found before any discovery has taken place that Lietz cannot establish the existence of a fixed policy. *See, e.g.*, *Carducci v. Aetna U.S. Healthcare*, 247 F. Supp. 2d 596, 610 (D.N.J. 2003) (declining to make factual determination as to futility at pleading stage where "[f]actual issues remain as to whether the insurers

In short, even if Lietz was required to exhaust some unspecified remedy, and even if the Court ignored Defendants' burden to establish the affirmative defense, the Complaint plausibly alleges that exhaustion should have been excused.

## IV.     PLAINTIFFS' STATE LAW CLAIMS SHOULD BE REINSTATED.

After dismissing the federal claims, the District Court declined to exercise supplemental jurisdiction over Plaintiffs' state law claims (Count III). JA019. Since the federal claims should be reinstated, the state law claims should be reinstated as well.

---

still had a fixed policy denying benefits. . ."), *rev'd on other grounds*, *Levine v. United Healthcare Corp.*, 402 F.3d 156 (3d Cir. 2005); *Gunning v. Unisys Corp.*, 2009 WL 249793, at *3 (W.D. Pa. Feb. 2, 2009) (denying motion to dismiss where plaintiff "has yet to enjoy an opportunity to discover facts that may support his positions regarding one or more of the futility factors.").

## CONCLUSION

For all of the reasons discussed above, this Court should reverse the District

Court's order dismissing Plaintiffs' claims.


Dated: June 16, 2014                    Respectfully submitted,


                                        /s/ Steven A. Schwartz
                                        Steven A. Schwartz
                                        Catherine Pratsinakis
                                        **CHIMICLES & TKELLIS LLP**
                                        361 West Lancaster Avenue
                                        Haverford, PA 19041
                                        Tel: (610) 642-8500

                                        D. Brian Hufford
                                        Jason A. Cowart
                                        **ZUCKERMAN SPAEDER LLP**
                                        1185 Avenue of the Americas
                                        31st Floor
                                        New York, NY 10036-2603
                                        Tel: (646) 746-8662

                                        Caroline E. Reynolds
                                        **ZUCKERMAN SPAEDER LLP**
                                        1800 M Street, NW
                                        Suite 1000
                                        Washington, DC 20036
                                        Tel: (202) 778-1800

                                        Vincent N. Buttaci
                                        John W. Leardi
                                        Paul D. Werner
                                        **BUTTACI & LEARDI, LLC**
                                        212 Carnegie Center, Suite 206
                                        Princeton, NJ 08540
                                        Tel: (609) 919-6311

Gerald McGonagle
David Spencer
**McGONAGLE SPENCER, P.C.**
1533 Locust Street
Kansas City, MO 64108
Tel: (816) 221-2222

Paul M. Weiss
Jeffrey A. Leon
**COMPLEX LITIGATION GROUP LLC**
513 Central Avenue
Suite 300
Highland Park, IL 60035
Tel: (847) 433-4500

James E. Cecchi
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO**
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

Joe R. Whatley, Jr.
Edith M. Kallas
**WHATLEY KALLAS**
380 Madison, 23rd Floor
New York, NY 10017
Tel: (212) 447-7060

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type–volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,887 words excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.

Dated: June 16, 2014                         /s/ Steven A. Schwartz
                                             Steven A. Schwartz

## CERTIFICATION OF BAR MEMBERSHIP

I hereby certify that I am a member of the Bar of the United States Court of

Appeals for the Third Circuit.


Dated: June 16, 2014                                    /s/ Steven A. Schwartz
                                                        Steven A. Schwartz

**CERTIFICATION OF ELECTRONIC FILING
AND VIRUS CHECK**

Counsel herby certifies that the electronic copy of this Brief for Appellants

is identical to the paper copies filed with the Court. A virus check was performed

on the PDF electronic file of the brief using Symantec Endpoint virus scan

software.


Dated: June 16, 2014                          /s/ Steven A. Schwartz
                                              Steven A. Schwartz

## CERTIFICATE OF SERVICE

I hereby certify that all counsel listed below on this Certificate of Service are Filing Users of the Third Circuit's CM/ECF system, and that this document is being served electronically on them by Notice of Docket Activity:

Michael P. Daly

Andrew Z. Edelstein

Francine Friedman Griesing

Richard M. Haggerty

Warren Haskel

Frank M. Holozubiec

Kathryn Goldstein Legge

Elizabeth Mann

William H. Pratt

Charles A. Rothfeld

Joshua B. Simon

In addition, one courtesy copy of the Brief of Plaintiffs-Appellants and each volume of the Joint Appendix is being sent today, June 16, 2014, via First Class Mail, to:

Michael P. Daly
Richard M. Haggerty
DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, Pennsylvania 19103-6996

Elizabeth Mann
Andrew Z. Edelstein
MAYER BROWN LLP
350 South Grand Avenue, Ste. 2500
Los Angeles, California 90071-1503

*Counsel for Defendants American Specialty Health, Inc. and American Specialty Health Networks, Inc.*

and:

Francine Friedman Griesing
Kathryn Goldstein Legge
GRIESING LAW LLC
1717 Arch Street, Ste. 3630
Philadelphia, Pennsylvania 19103

William H. Pratt
Joshua B. Simon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022

*Attorneys for Defendants Cigna Corp. and Connecticut General Life Insurance Co.*

Dated: June 16, 2014                    /s/ Steven A. Schwartz
                                         Steven A. Schwartz

No. 14-1832

---

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
# 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔗𝔥𝔦𝔯𝔡 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

---

AMERICAN CHIROPRACTIC ASSOCIATION, et al.,

Plaintiffs-Appellants

vs.

AMERICAN SPECIALTY HEALTH, INCORPORATED, et al.,

Defendants-Appellees.

---

On Appeal from the U.S. District Court for the
Eastern District of Pennsylvania

Civil Action No. 2:12-cv-07243

---

**JOINT APPENDIX VOLUME ONE OF THREE**
**(Pages JA001-JA024)**

---

D. Brian Hufford
Jason S. Cowart
ZUCKERMAN SPAEDER LLP
1185 Avenue of the Americas
New York, NY 10036
Telephone: (212) 704-9600
Facsimile: (212) 704-4256

Steven A. Schwartz
Catherine Pratsinakis
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633

*Co-Lead Counsel for Plaintiffs-Appellants*
*[Additional Counsel on Signature Page]*

# JOINT APPENDIX
## <u>TABLE OF CONTENTS</u>

**VOLUME I (JA001-JA024)**

Order Granting Defendants' Motion to Dismiss ..................................................................... JA001

Opinion Regarding Motion to Dismiss .................................................................................. JA002

Notice of Appeal .................................................................................................................... JA020

**VOLUME II (JA025-JA387)**

Civil Docket Entries ............................................................................................................... JA025

Class Action Complaint .......................................................................................................... JA044

Defendants CIGNA Corporation and Connecticut General
   Life Insurance Company's Motion to Dismiss Plaintiffs' Class Action Complaint ............. JA121

[Corrected] Memorandum of Law in Support of CIGNA Corporation
   and Connecticut General Life Insurance Company's Motion to Dismiss
   Plaintiffs' Class Action Complaint .................................................................................... JA123

Declaration of Kathryn Goldstein Legge, Esq. in Support of
   Defendants CIGNA Corporation and Connecticut General
   Life Insurance Company's Motion to Dismiss Plaintiffs' Class Action Complaint ............. JA162

**VOLUME III (JA388-JA612)**

American Specialty Health Inc. and American Specialty Health Networks, Incorporated's
   Motion to Dismiss Plaintiffs' Class Action Complaint ..................................................... JA388

Memorandum in Support of Motion by Defendants American Specialty Health, Inc.
   and American Specialty Health Networks, Incorporated to Dismiss Complaint ...................... JA391

Plaintiffs' Omnibus Memorandum of Law in
   Opposition to Defendants' Motions to Dismiss ................................................................. JA432

Declaration of D. Brian Hufford in Opposition
   to Defendants' Motion to Dismiss ..................................................................................... JA493

CIGNA's Reply Brief in Support of Motion to Dismiss
   Plaintiffs' Class Action Complaint .................................................................................... JA572

American Specialty Health Inc. and American Specialty Health Networks, Incorporated's
   Reply to Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants'
   Motions to Dismiss Plaintiffs' Class Action Complaint ................................................... JA597

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN CHIROPRACTIC | : | CIVIL ACTION |
| ASSOCIATION, *et al.* | : | |
| *Plaintiffs* | : | |
| | : | NO. 12-7243 |
| v. | : | |
| | : | |
| AMERICAN SPECIALTY HEALTH | : | |
| INCORPORATED, *et al.* | : | |
| *Defendants* | : | |

## ORDER

**AND NOW,** this 27th day of March 2014, upon consideration of the motions to dismiss Plaintiffs' complaint filed by Defendants American Specialty Health Inc., American Specialty Health Networks, Inc., CIGNA Corporation and Connecticut General Life Insurance Company pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) [ECF 41 and 43], Plaintiffs' omnibus opposition thereto [ECF 51], Defendants' replies thereto [ECF 54 and 55], the allegations contained in the complaint [ECF 1], and for the reasons set forth in the accompanying memorandum opinion, it is hereby **ORDERED** that the motions to dismiss are **GRANTED,** and Plaintiffs' complaint is **DISMISSED**.

BY THE COURT:

NITZA I. QUIÑONES ALEJANDRO, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMERICAN CHIROPRACTIC** | : | **CIVIL ACTION** |
| **ASSOCIATION**, *et al.* | : | |
| *Plaintiffs* | : | |
| | : | **NO. 12-7243** |
| **v.** | : | |
| | : | |
| **AMERICAN SPECIALTY HEALTH** | : | |
| **INCORPORATED**, *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    March 27, 2014

# MEMORANDUM OPINION

## INTRODUCTION

Before the Court are motions to dismiss filed by Defendants American Specialty Health

Inc., American Specialty Health Networks, Inc.,[1] CIGNA Corporation and Connecticut General

Life Insurance Company[2] (collectively, "Defendants"), pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6), which seek the dismissal of claims asserted against them under

the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C.A. § 1132(a)(1)(B), based

on a lack of standing, failure to administratively exhaust claims, and/or failure to state a claim

upon which relief can be granted. [ECF 41 and 43]. Plaintiffs American Chiropractic

Association ("ACA"), on its own behalf and on behalf of its members, Steven G. Clarke, D.C.,

on his own behalf and on behalf of a proposed class of all similarly situated Doctors of

Chiropractic, and Carol A. Lietz, on her own behalf and a proposed class of all similarly situated

---

[1] Defendants American Specialty Health Inc. and American Specialty Health Networks, Inc., herein, collectively, referred to as "ASHN."

[2] Defendants CIGNA Corporation and Connecticut General Life Insurance Company herein, collectively, referred to as "CIGNA."

1

health insurance subscribers, (collectively, "Plaintiffs") have opposed the motions. [ECF 51].
Thus, the matter is ripe for consideration.

For the reasons stated herein, Defendants' motions to dismiss are granted.

## BACKGROUND

For the purpose of ruling on Defendants' motions to dismiss, this Court accepts, as true, the factual allegations contained in Plaintiffs' complaint. However, because this Court's decision is limited to the issues of standing and exhaustion, only those facts relevant to these particular issues are summarized.[3]

### *Plaintiff Carol A. Lietz's Claims*[4]

Lietz is a subscriber to an employer healthcare plan offered by her private employer and administered by CIGNA ("Plan").[5] (Comp. ¶15). In turn, CIGNA retained ASHN to administer the chiropractic benefits for its insureds, including Lietz. (*Id.* at ¶7).

Under the Plan, Lietz sets aside funds in a Health Savings Account ("HSA") to cover out-of-pocket medical costs, including deductibles and co-payments. Any unused balance in the HSA is rolled over for the next calendar year's expenses. (*See* Plan at p. 62).

Relevant to this discussion, the Plan defines "Covered Health Services" as follows:

---

[3] Since Plaintiffs lack standing to bring this action and/or have failed to exhaust their administrative remedies, there is no need to resolve the issue of whether a claim has been asserted upon which relief can be granted.

[4] Notably, the facts underlying Lietz's claims differ from those underlying the claims asserted by Dr. Clarke and the ACA, calling into question the propriety of Plaintiffs' joinder of these claims in one action.

[5] A copy of the Plan was attached as an exhibit to Defendant CIGNA'S motion to dismiss. Because Plaintiffs refer to and rely upon the terms of the Plan in their complaint, this Court may consider the Plan when deciding Defendants' motions to dismiss.

JA003

> Benefits for Covered Health Services depend on the type of
> expense and the option you elect. In all cases, benefits are based
> on reasonable and customary charges and medical necessity as
> determined by the option you elect. In-network expenses are based
> on the rate negotiated by the Claims Administrator with the
> medical provider.

(*Id.* at p. 175). The Plan also defines "Eligible Expenses for Covered Health Services" (a) for in-network ("INET") services as "the contracted fee(s) with that provider," and (b) for out-of-network ("ONET") services as "the negotiated rates agreed to by the non-Network provider and either the Claims Administrator or one of its vendors, affiliates or subcontractors." (*Id.* at p. 177).

In March 2012, Lietz received chiropractic services from her CIGNA INET provider, Dr. Inchiostro. (Comp. ¶32). Thereafter, Dr. Inchiostro submitted a claim for reimbursement of five separate services rendered to ASHN on behalf of Lietz in the amount of $160.00. (*Id.*). On June 12, 2012, Dr. Inchiostro received a remittance from ASHN in the amount of $88.00 as the "total amount allowed" under the INET fee schedule. (*Id.*).

As required, CIGNA sent Lietz an Explanation of Benefits ("EOB") statement which indicated that the "amount billed" for the chiropractic services rendered by Dr. Inchiostro was $127.28.[6] (*Id.* at ¶34). The statement also indicated that the $127.28 amount applied against her deductible and was paid from her HSA. (*Id.*). In her complaint, Lietz disputes the payment and corresponding deduction from her HSA, and argues that each amount deducted should have been limited to the actual monetary compensation Dr. Inchiostro received for his services, *i.e.*, $88.00.

After Lietz raised an issue with her provider regarding the charges made (*Id.* at ¶36), on September 18, 2012, Dr. Inchiostro emailed ASHN and inquired:

---

[6] The EOB statement, however, does not mention that $88.00 was the amount paid to Dr. Inchiostro.

3

> I am having our patients Health Reimbursement Account money being pulled out of their accounts by Cigna, sent to ASHN and then a lessor amount being sent to us by ASHN. When I called ASHN to inquire where the extra HRA funds were, I was told that ASHN and Cigna have a different fee schedule than ASHN and us, the provider's office, do. Which would lead me to believe that ASHN pockets this extra money that is above our fee schedule arrangement with them. The customer service rep I spoke with at ASHN (ref# 8241047) told me to look at our contract with you and it should specify this in there. Well, I've looked through the whole thing and have not come across anything that explains why my patient's HRA money is being kept by ASHN instead of paying for qualified medical expenses. Could you please explain this to me in writing or link me to the place in our contact with you that is supposed to explain this, as the customer service rep stated. I would appreciate a prompt response to this matter as I and the patient are wondering where their HRA funds are ending up!

(*Id.* at ¶37).

ASHN responded the next day by email:

> Thank you for your inquiry. I do apologize if the office was advised to check in contractual agreement for information that are not pertinent to the office. The contractual agreement between the office and ASH is: the office will be reimbursed at the fee schedule amount allowed by the Payor Summary, available under attachment G, section 2.0. Any other agreement between ASH and Cigna is confidential and will not be available in any written agreement between the doctor and ASH. If the member has any questions on how the HRA account is used, please refer the member to the Cigna Member service department.

(*Id.* at ¶38).

Notably, the complaint is silent as to whether Lietz or Dr. Inchiostro ever contacted CIGNA or followed up in any way.

The gravamen of Lietz's complaint is that the EOB statements CIGNA issued reflected an "amount billed" as the negotiated fee rate established under CIGNA's agreement with the provider, ASHN. This negotiated rate differed substantially from the negotiated (lower) rate established under ASHN's agreement with the actual provider/chiropractor, which is the rate that was ultimately paid for the services rendered yet billed to the consumer at the CIGNA/ASHN

4

JA005

rate. (*Id.* at ¶¶32-44). Lietz further contends that under the CIGNA/ASHN fee agreement, CIGNA treated ASHN as a provider and issued EOBs with her out-of-pocket obligation calculated based on the CIGNA/ASHN fee schedule agreement, to manipulate and achieve CIGNA's medical loss ratio (MLR – the ratio of money spent paying claims to total expenses), as required under various laws. (*Id.* at ¶7-8).

### *Plaintiff Dr. Clarke's Claims*

Dr. Clarke is an ONET chiropractor who has not contracted with Defendants or agreed to accept their fee schedule. (*Id.* at ¶98). Dr. Clarke asserts that he provided chiropractic care to patients who are participants of unspecified ERISA plans administered by CIGNA and who signed a "standard Assignment of Benefits form" "authorizing payment of medical benefits" to him, while still remaining "financially responsible" for the services rendered; *to wit*:

> I authorize payment of medical benefits to High Street Rehabilitation, LLC for all services rendered. I understand that I am financially responsible for all charges whether or not they are paid by insurance (commercial, worker's compensation, auto, etc.). In the event of an unpaid balance, I am aware that my bill will be sent to the collection agency and that I will be held responsible for any and all charges incurred, including attorney fees.

(*Id.* at ¶101).

Dr. Clarke asserts that in processing the claims submitted on behalf of his patients, ASHN, acting as CIGNA's agent, applied certain internal policies designed to improperly reduce medical benefits under CIGNA plans. Specifically, Dr. Clarke alleges that ASHN has an internal policy of limiting coverage of ONET provider services to five sessions and up to two separate therapies per session regardless of whether additional services are otherwise deemed medically necessary. (*Id.* at ¶¶102, 106-107). According to Dr. Clarke, the coverage limitations are not disclosed to CIGNA's insureds, and are inconsistent with CIGNA's obligation to reimburse patients for medically necessary chiropractic therapies. (*Id.* at ¶¶106-07, 113).

5

*Plaintiff American Chiropractic Association's Claims*

ACA is a national association for chiropractors that purports to represent over 15,000 members. (*Id.* at ¶¶1, 16). In this action, ACA asserts claims for equitable and injunctive relief in an associational capacity on behalf of its members who have allegedly been injured as a result of Defendants' violations of ERISA and various state statutes. (*Id.* at ¶1, 11, 18).

**LEGAL STANDARD**

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across

6

JA007

the line from conceivable to plausible.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

In deciding motions to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefits*, 998 F.2d at 1196. Documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may also be considered. *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (citing *Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007)). Under Rule 12(b)(1) a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. *Id.* "With respect to 12(b)(1) motions in particular, '[t]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." *Id.* at 244 (quoting *Stalley v. Catholic Health Initiatives*,

7

509 F.3d 517, 521 (8th Cir. 2007)). In determining whether a complaint adequately pleads facts to establish standing, courts apply the standard used under Rule 12(b)(6). *Id.* at 243.

## DISCUSSION

The provisions of ERISA provide that a plan participant may bring a private civil action either to recover benefits due under the terms of the plan, to enforce rights under the terms of the plan, or to clarify rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B); *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Adams v. Life Ins. Co. of N. Am.,* 2009 U.S. Dist. LEXIS 68135, at *11 (E.D. Pa. Aug. 3, 2009).

ERISA's statutory standing requirements provide in § 502(a)(1) and (3) that a civil action may only be brought:

> (1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(1), (a)(3).

The terms "participant" and "beneficiary" are defined in ERISA § 3(7)-(8):

> (7) The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.
>
> (8) The term "beneficiary" means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.

29 U.S.C. § 1002(7)-(8).

8

In addition, the Supreme Court has held that:

> the term "participant" is naturally read to mean either "employees in, or reasonably expected to be in, currently covered employment," or former employees who "have ... a reasonable expectation of returning to covered employment" or who have "a colorable claim" to vested benefits. In order to establish that he or she "may become eligible" for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future. "This view attributes conventional meanings to the statutory language since all employees in covered employment and former employees with a colorable claim to vested benefits 'may become eligible.' "

*Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 117-118 (1989) (internal citations omitted).

To bring a civil action under ERISA, Plaintiffs must have a colorable claim to benefits under the Plan. This colorable claim requirement has a lower burden of persuasion than showing a likelihood of success on the merits. *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 78–79 (3d Cir. 2001).

### *Issue of Plaintiff's failure to administratively exhaust her claims*

There is no dispute that Plaintiff Lietz is a participant of an ERISA plan and, therefore, has standing under the statute to pursue her claims and seek the recovery of any out-of-pocket payments incorrectly charged to her. Defendants argue, however, that Plaintiff Lietz must first exhaust her administrative remedies before suit can be filed, and moves for the dismissal of her complaint. Plaintiff does not dispute that she did not pursue administrative review of her claims.

Case law holds that "except in limited circumstances . . . a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan." *Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990); *see also Stanley v. IBEW*, 207 Fed. Appx. 185, 189 (3d Cir. 2006) (dismissing ERISA claims where plaintiffs failed to exhaust); *D'Amico v. CBS Corp.* 297 F.3d 287, 293 (3d Cir. 2002) (same); *Shephard v. Aetna Life Ins. Co.*,

9

JA010

2009 WL 2448548, at *3 (E.D. Pa. Aug. 7, 2009) ("Exhaustion of plan remedies is required in claims to enforce the terms of a benefit plan . . . this exhaustion requirement is strictly enforced.").

Notwithstanding, Plaintiff argues that she should be excused from this exhaustion requirement because to do so would be futile. To establish futility Plaintiff must provide a "clear and positive showing of futility." *D'Amico*, 297 F.3d at 293; *see also Bennett v. Prudential · Insurance Co.*, 192 Fed. Appx. 153, 156 (3d Cir. Aug. 17, 2006). In determining whether futility exists, the Third Circuit identified the following factors that a court should consider:

> (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile.

*Harrow v. Prudential Ins. Co. of America*, 279 F.3d 244, 250 (3d Cir. 2002). These factors are not to be weighed equally. *Id.* In addition, the Third Circuit has held that a plaintiff who failed to take any actions toward exhaustion beyond an initial phone call could not be excused from exhaustion for futility. *Id.* at 252; *see also D'Amico*, 297 F.3d at 293 (affirming district court's rejection of plaintiff's futility argument and holding "[o]ur precedent makes clear, however, that plaintiffs who fail to make known their desire for benefits to a responsible company official are precluded from seeking judicial relief.").

In the complaint, Lietz does not allege that she diligently pursued administrative relief, that immediate judicial review was necessary, that Defendants failed to comply with their own internal administrative procedures, or that a plan administrator testified that any administrative appeal would be futile. Lietz alleges only that her chiropractor, on one occasion, wrote a letter to ASHN (not CIGNA) inquiring as to the purported billing discrepancy underlying her chiropractic

10

treatment cost. This limited informal communication by her provider falls short of meeting the exhaustion requirements. *See Bennett*, 192 Fed. Appx. at 156 ("[A]llowing informal attempts to substitute for the formal claims procedure would frustrate the primary purposes of the exhaustion requirement.").

To excuse the requirement of exhaustion, Plaintiff focuses solely on her contention that Defendants had a "broad policy" of "appl[ying] the fee CIGNA pays to ASHN in calculating the amount to be allocated to insureds' deductibles." Plaintiff's complaint, however, does not provide sufficient facts to support the existence of a "fixed policy" such that an administrative appeal would be futile. *See Balmat v. CertainTeed Corp.*, 2004 WL 2861873, at *4 (E.D. Pa. Dec. 9, 2004) (holding that a plaintiff could not establish futility by "simply cit[ing] a section of the Plan and claim[ing] that it establishes a fixed policy without providing any example or further explanation" and "without ever trying to engage the administrative appeals process."). As such, Plaintiff has failed to allege facts sufficient to make the requisite "clear and positive showing of futility" to merit a waiver of the exhaustion requirement.

Lietz also argues that dismissal based upon her failure to exhaust would be premature, and should be reserved for summary judgment. Plaintiffs' reliance on *Gunning v. Unisys Corp.*, 2009 WL 249793 (W.D. Pa. Feb. 2, 2009) and *Carducci v. Aetna U.S. Healthcare*, 247 F. Supp.2d 596, 610 (D.N.J. 2003) to support her argument is misplaced since the complaints in those cases contained sufficient factual allegations to support a claim of futility. Here, as described, Lietz's factual allegations are insufficient to make the required "clear and positive showing of futility." Plaintiff's argument ignores decisions of this Circuit which have deemed dismissal warranted where the complaint lacked factual allegations to establish futility. *See e.g., Bennett v. Prudential Ins. Co.*, 192 Fed. Appx. 153, 155 (3d Cir. 2006) (affirming dismissal

11

because factual allegations were insufficient to show futility); *Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Ass'n Trust v. Sidney Charles Mkts., Inc.*, 2003 WL 220181, at *5-6 (E.D. Pa. Jan. 29, 2003) (granting Rule 12(b)(6) motion to dismiss on exhaustion grounds).

Under the circumstances, Defendants' motion to dismiss Lietz's claims for failure to exhaust administrative remedies is warranted.

### Issue of standing regarding Dr. Clarke

In their motions to dismiss, Defendants argue that all of the claims asserted against them by Dr. Clarke must be dismissed for lack of standing. As stated, it is well-settled that standing to sue under §502(a) of ERISA, the statute's civil enforcement provision, is generally limited to participants or beneficiaries of ERISA governed plans. 29 U.S.C. §1132(a); *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) ("By its terms, standing under the statute is limited to participants and beneficiaries.").

As defined in ERISA, Dr. Clarke is neither a participant nor a beneficiary. Nonetheless, he contends that he may sue as an assignee of purported participants or beneficiaries.[7] When a defendant challenges a plaintiff's standing in a motion to dismiss (as Defendants have done), "[t]he party invoking federal jurisdiction bears the burden of establishing" standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

---

[7] As recognized by a number of district courts in this circuit, "the Third Circuit has not settled the question of standing to sue under §502 of ERISA by assignment." *Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp.2d 792, 808 (D.N.J. 2011); *see also MHA, LLC v. Aetna Health, Inc.*, 2013 WL 705612, *2 (D.N.J. Feb. 25, 2013). In contrast, a number of other circuits have recognized a plaintiff's right to sue under ERISA by the valid assignment of a welfare benefit. *See Pascack Valley Hosp.*, 388 F.3d at 401 (stating that "almost every circuit that has addressed the issue has ruled that a health care provider can assert a claim under §502(a) when a beneficiary or participant has assigned to the provider the individual's benefits under the plan.").

12

JA013

To have standing as an assignee under ERISA, Dr. Clarke must "demonstrate that an appropriate assignment exists." *Community Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan*, 143 Fed. Appx. 433, 436 (3d Cir. 2005) (holding that a failure to show a valid assignment "is fatal to standing" under ERISA). Dr. Clarke contends that he has standing by virtue of assignments of claims from a number of his patients, who are participants and/or beneficiaries. Specifically, Dr. Clarke relies on a standard *Assignment of Benefits* form obtained from "a number of Cigna Insured patients" he has treated. (Comp. ¶101). The assignment form provides as follows:

> I authorize payment of medical benefits to High Street Rehabilitation, LLC for all services rendered. I understand that I am financially responsible for all charges whether or not they are paid by insurance (commercial, worker's compensation, auto, etc.). In the event of an unpaid balance, I am aware that my bill will be sent to the collection agency and that I will be held responsible for any and all charges incurred, including attorney fees.

(*Id.*).

As set forth in the complaint, however, these alleged assignment(s) do not give Dr. Clarke standing to assert his patients' rights under their respective plans and pursue litigation under ERISA. To the contrary, the purported assignments merely afford Dr. Clarke the right to seek payment directly from the insurance companies on his patients' behalf for the services rendered. Courts in this Circuit have found similar payment assignments to be insufficient authorization for providers to pursue ERISA claims on behalf of their patients. *See e.g.*, *MHA, LLC v. Aetna Health, Inc.*, 2013 WL 705612, at *8 (D.N.J. Feb. 25, 2013) (finding patient's authorization for provider to receive payment from insurance company insufficient assignment of right to sue under ERISA); *Franco v. Connecticut General Life Ins. Co.*, 818 F.Supp.2d 792 (D.N.J. 2011); *Cooper Hosp. Univ. Med. Ctr. v. Seafarers Health and Benefits Plan*, 2007 WL 2793372, at *3 (D.N.J. Sept. 25, 2007) (finding assignment of payments and appeal rights to

13

provider did not "give the Hospital the right to pursue litigation" under ERISA). This Court

finds these decisions persuasive. In *Franco,* 818 F.Supp.2d 792, the district court set forth its

reasoning, as follows:

> [T]he assignments consisted of nothing more than the patient-
> insured's transfer of his or her right to reimbursement by the
> insurer for an [out-of-network] service . . . Plaintiffs have
> attempted to conflate a [non-par provider's] method of billing and
> collecting payment with the [non-par provider's] assumption of the
> patient's rights to benefits under the health plan. At best, the
> allegations provide only the most ambiguous and conclusory
> information about what the purported assignments entail. At worst
> . . . they indicate that the assignments were limited to a patient's
> assigning his or her right to receive reimbursement from CIGNA
> for the covered portion of the service bill, which in no way can be
> construed as tantamount to assigning the right to enforce his or her
> rights under the plan.

*Id.* at 811-12.

This same assignment issue was addressed in *MRI Scan Center, LLC v. National Imaging

Associates, Inc.*, 2013 WL 1899689 (S.D. Fla. May 7, 2013), a litigation similar to the instant

case. As the *MRI* court explained, "[a]n assignment of the right to direct payment of benefits

will not assign patients'/assignors' right to bring causes of action under other ERISA provisions

that are not related to the reimbursement of benefits." *MRI*, 2013 WL 1899689, at *7 (citing

*Sanctuary Surgical Centre, Inc. v. United Healthcare, Inc.*, 2013 WL 149356, at *11-12 (S.D.

Fla. Jan. 14, 2013) (holding that plaintiff did not have standing to seek ERISA relief – other than

for unpaid benefits – where "the complaint . . . alleges only that the patient participants or

beneficiar[ies] assigned the right to direct payment for unpaid charges to the plaintiffs, and does

not allege that the patients assigned all rights under their plans."). In *MRI*, the plaintiff alleged

that its assignments were "limited to 'bill[ing] and receiv[ing] payments,'" and left the patient

assignor financially responsible for any amounts not covered by insurance. *MRI*, 2013 WL

JA015

1899689, at *7. The court held that such an assignment was insufficient to establish the provider plaintiff's standing to sue for equitable relief under ERISA §502(a)(3). *Id.* at *7.

As in *Franco* and *MRI*, the purported assignment here unequivocally "indicate[s] that the assignments were limited to a patient's assigning his or her right to receive reimbursement from CIGNA . . . which in no way can be construed as tantamount to assigning the right to enforce any other rights under the plan." *Franco,* 818 F.Supp.2d at 811. In addition, the purported assignments leave the patients "financially responsible for all charges whether or not they are paid by insurance." (*See* Comp. ¶101). Thus, Dr. Clarke's assignment of benefits forms do not authorize him to pursue litigation under ERISA on behalf of his patients.

In an attempt to broaden the scope of the purported assignment(s), Plaintiffs attached to their opposition brief an "Authorized Representative" form that Dr. Clarke purportedly received from a patient on November 19, 2012, but is not mentioned in the complaint.[8] The authorization provides as follows:

> ERISA Authorization
> I hereby designate, authorize, and convey to [Steven G. Clarke, D.C. ("Provider")] to the full extent permissible under law and under any applicable insurance policy and/or employee health care benefit plan: (1) the right and ability to act as my Authorized Representative in connection with any claim, right, or cause of action that I may have under such insurance policy and/or benefit plan; and (2) the right and ability to act as my Authorized Representative to pursue such claim, right, or cause of action in connection with said insurance policy and/or benefit plan (including but not limited to, the right and ability to act as my Authorized Representative with respect to a benefit plan governed by the provisions of ERISA as provided in 29 C.F.R. §2560.503(1)(b)(4)) with respect to any healthcare expense incurred as a result of the services I received from Provider and, to

---

[8] It is well-settled that this Court should not "consider after-the-fact allegations in determining the sufficiency of [a] complaint." *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007); *see also Commonwealth of Pa. ex. rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")

the extent permissible under the law, to claim on my behalf, such
benefits, claims, or reimbursement, and any other applicable
remedy, including fines.

(Assignment of Benefits/ERISA Authorized Representative Form, attached as Exhibit A to
Declaration of D. Brian Hufford to Plaintiffs' Brief).

Since this new factual allegation was not included in Plaintiffs' complaint, this Court is
precluded from considering it. This Court notes that while this purported authorization goes
beyond that cited in Plaintiffs' complaint, it falls short of establishing Dr. Clarke's standing to
pursue the underlying ERISA claims on behalf of his patients. Dr. Clarke has not alleged that
the patient from whom this broad authorization was obtained was a participant in an ERISA-
governed plan or that the patient has suffered any kind of injury as a result of the allegations
contained in the complaint. To establish standing through such broad patient assignment, Dr.
Clarke would have to allege facts sufficient to establish that the patient suffered injury as a result
of Defendants' alleged wrongdoing; none were pled, and the "authorization" confers no right
onto Dr. Clarke to pursue those ERISA claims. Accordingly, this Court finds that Dr. Clarke has
failed to establish standing in this matter. Defendants' motion to dismiss for lack of standing and
subject matter jurisdiction is granted as to Dr. Clarke's claims.

*Issue of standing regarding Plaintiff ACA*

Defendants similarly seek dismissal of the ERISA claims asserted by Plaintiff ACA on
the basis that it has failed to allege facts sufficient to establish associational standing. In *Hunt v.
Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977), the Supreme Court
established a three prong test for associational standing; *to wit*: the party must allege facts to
establish that: (1) its members would otherwise have standing to sue in their own right; (2) the
interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim

16

JA017

asserted nor the relief requested requires the participation of individual members in the lawsuit. *Id.* at 343. Defendants argue that the ACA has failed to meet requirements (1) and (3). This Court agrees with Defendants.

As to the first prong, for the same reasons Dr. Clarke has failed to establish standing, Plaintiff ACA has also failed to establish that its members (chiropractors like Dr. Clarke) have standing to sue in their own right. As set forth above, ERISA specifically limits standing to participants and beneficiaries. As pled in the complaint, the members of ACA do not meet this definition.

As to the final prong, ACA has failed to establish that the claims asserted and/or the relief requested in the complaint do not require the participation by its individual members. To the contrary, ACA's asserted claims require the participation of its members in order to demonstrate, *inter alia*, that: (1) its members were participants in CIGNA administered plans which permitted the participants' assignment of rights; (2) its members had obtained sufficient assignments of their patient's rights and claims under ERISA; and (3) its members' patients had suffered an injury as a result of the Defendants' alleged wrongdoing. This issue, similarly, was persuasively addressed by the district court in *Franco*, which found that "resolving the claims at issue requires careful examination, on a provider-by-provider basis, of the assignments signed by patients and whether they contain the language required for a valid assignment of ERISA" claims. *Franco*, 818 F. Supp.2d at 813. Because ACA has not met the *Hunt* test, it lacks associational standing and its claims are dismissed.[9]

---

[9] Plaintiffs' reliance on *Pennsylvania Psychiatric Soc. v. Green Spring Health Services, Inc.*, 280 F.3d 278 (3d Cir. 2002) is misplaced because the defendants in that matter conceded that the association plaintiff met the first prong of the *Hunt* test. *Id.* at 283. Moreover, that matter did

17

*ACA's state law claims*

At Count III, Plaintiff ACA asserts state law claims based upon the Defendants' purported violations of the anti-discrimination, prompt pay, and utilization management statutes of New Jersey, Tennessee, Connecticut, and Missouri. ACA relies upon supplemental jurisdiction to support this Court's jurisdiction over these state law claims. (*See* Comp. at ¶22). Because this Court has dismissed all of Plaintiffs' federal claims over which it has original jurisdiction, pursuant to 28 U.S.C. §1367(c)(3), it declines to exercise supplemental jurisdiction over ACA's remaining state law claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir. 1999); *Eberts v. Wert*, 1993 WL 304111, *5 (E.D. Pa. Aug. 9, 1993) (holding that "Courts should ordinarily decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed.").

**CONCLUSION**

For the reasons stated, Defendants' motions to dismiss are granted. An order consistent with this memorandum opinion follows.

NITZA I. QUIÑONES ALEJANDRO, J.

---

not involve, in any way, the primary standing issue presented in this case, *i.e.*, whether the plan beneficiaries/participants have assigned their ERISA claims to their provider chiropractors.

18

JA019

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

AMERICAN CHIROPRACTIC
ASSOCIATION, *et al.*,

              Plaintiffs,

   v.

AMERICAN SPECIALTY HEALTH
INCORPORATED, *et al.*,

             Defendants.

Civil Action No. 2:12-cv-07243-NIQA

## NOTICE OF APPEAL

Notice is hereby given that Plaintiffs American Chiropractic Association, on its own behalf and in a representational capacity on behalf of its members, Steven G. Clarke, D.C., individually, and on behalf of all other similarly situated Doctors of Chiropractic, and Carol A. Lietz, individually, and on behalf of all other similarly situated health insurance subscribers (collectively, "Plaintiffs") appeal, pursuant to 28 U.S.C. § 1291, to the United States Court of Appeals for the Third Circuit from the Order [Docket No. 76] and Memorandum Opinion [Docket No. 75] of the United States District Court for the Eastern District of Pennsylvania, Honorable Nitza I. Quiñones Alejandro, entered in this action on March 28, 2014 (collectively, the "Order"). The Order granted the motions to dismiss by Defendants American Specialty Health, Inc., American Specialty Health Networks, Inc., CIGNA Corporation and Connecticut General Life Insurance Company.

JA020

The parties to the Order and the names and addresses of their respective attorneys are as follows:

Michael P. Daly (Pa. Id. No. 86103)
Richard M. Haggerty (Pa. Id. No. 209479)
DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, Pennsylvania 19103-6996
Telephone: (215) 988-2700
Facsimile: (215) 988-2757

and

Elizabeth Mann
Andrew Z. Edelstein
MAYER BROWN LLP
350 South Grand Avenue, Ste. 2500
Los Angeles, California 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248
*Counsel for Defendants*
*American Specialty Health, Inc. and*
*American Specialty Health Networks, Inc.*

Francine Friedman Griesing
Kathryn Goldstein Legge
GRIESING LAW LLC
1717 Arch Street, Ste. 3630
Philadelphia, Pennsylvania 19103
Telephone: (215) 618-3720
Facsimile: (215) 814-9049

and

William H. Pratt
Joshua B. Simon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
*Attorneys for Defendants*
*Cigna Corp. and*
*Connecticut General Life Insurance Co.*

2

JA021

Dated: April 4, 2014                    Respectfully submitted,


                                        /s/ Catherine Pratsinakis
                                        Steven A. Schwartz (PA Id. 50579)
                                        Catherine Pratsinakis (PA Id. 80886)
                                        CHIMICLES & TIKELLIS LLP
                                        361 West Lancaster Avenue
                                        One Haverford Centre
                                        Haverford, Pennsylvania 19041
                                        Telephone: (610) 642-8500
                                        Facsimile: (610) 649-3633

                                        D. Brian Hufford
                                        Jason S. Cowart
                                        ZUCKERMAN SPAEDER LLP
                                        1185 Avenue of the Americas, 31st Floor
                                        New York, New York 10036
                                        Telephone: (212) 704-9600
                                        Facsimile: (212) 704-4256
                                        (admitted *Pro Hac Vice*)

                                        Robert J. Axelrod
                                        POMERANTZ LLP
                                        600 Third Avenue
                                        New York, New York 10016
                                        Telephone: (212) 661-1100
                                        Facsimile: (212) 661-8665

                                        Anthony J. Maul
                                        THE MAUL FIRM, P.C.
                                        68 Jay Street, Ste. 201
                                        Brooklyn, New York 11201
                                        Telephone: (646) 263-5780

                                        Vincent N. Buttaci
                                        John W. Leardi
                                        Paul D. Werner
                                        BUTTACI & LEARDI LLC
                                        103 Carnegie Center, Ste. 323
                                        Princeton, New Jersey 08540
                                        Telephone: (609) 799-5150
                                        Facsimile: (609) 799-5180

JA022

Gerald McGonagle
David Spencer
MCGONAGLE SPENCER P.C.
1533 Locust Street
Kansas City, Missouri 64108
Telephone: (816) 221-2222
Facsimile: (816) 221-2245

Paul M. Weiss
Jeffrey A. Leon
COMPLEX LITIGATION GROUP LLC
513 Central Avenue, Ste. 300
Highland Park, Illinois 60035
Telephone: (847) 433-4500
Facsimile: (847) 433-2500

James E. Cecchi
CARELLA BYRNE CECCHI
OLSTEIN BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744

Joe R. Whatley, Jr.
Edith M. Kallas
WHATLEYKALLAS, LLP
1180 Avenue of the Americas, 20th Floor
New York, New York 10036
Telephone: (212) 447-7060
Facsimile: (800) 922-4851

*Counsel for Plaintiffs*
*American Chiropractic Association, on its own*
*behalf and in a representational capacity on behalf*
*of its members, Steven G. Clarke, D.C.,*
*individually, and on behalf of all other similarly*
*situated Doctors of Chiropractic, and Carol A.*
*Lietz, individually, and on behalf of all other*
*similarly situated health insurance subscribers*

4

## <u>CERTIFICATE OF SERVICE</u>

I, Catherine Pratsinakis, hereby certify that on this 4th day of April, 2014, I caused the foregoing NOTICE OF APPEAL to be served upon all counsel of record via this Court's electronic filing system. I further certify that the foregoing is available for viewing and downloading from the electronic filing system.

Dated: April 4, 2014           /s/ Catherine Pratsinakis
                        Catherine Pratsinakis

JA024